**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.  Case No. 3:11-cr-98-J-32TEM

MOWAFAK SHAHLA
FADI CHAHLA
ANTOUN CHAHLA

_____

**ORDER**

This case is before the Court on Mowafak Shahla's, Fadi Chahla's, and Antoun Chahla's Renewed Motion for Judgment of Acquittal or Alternative Motion for New Trial (Doc. 215) and Supplemental Renewed Motion for Judgment of Acquittal or Alternatively Motion for New Trial (Doc. 218). The government filed its response in opposition (Doc. 221). Accordingly, the matter is ripe for review.

**I.  BACKGROUND**

Following an eight-day jury trial beginning on January 29, 2013, the jury returned guilty verdicts against each defendant of conspiracy to enter into marriages for the purpose of evading a provision of the immigration laws, in violation of 8 U.S.C. § 1325(c), and to make false statements to the United States Citizenship and Immigration Services, in violation of 18 U.S.C. § 1001 (Count One). (Doc. 213.) The jury also returned guilty verdicts as to each count charging the defendants with procuring or attempting to procure citizenship contrary to the law in violation of 18 U.S.C. § 1425(a) (Counts Two and Four against Mowafak Shahla, Counts Three and Seven against Antoun Chahla, and Count Five against Fadi Chahla).[1]  (Id.)

---

[1]  Just before trial, the government dismissed Count Six of the Indictment against Fadi Chahla.

All three defendants moved for judgment of acquittal at the close of the government's case and again at the close of all evidence. The Court reserved ruling on the motions each time pursuant to Rule 29(b), Federal Rules of Criminal Procedure, and submitted the case to the jury.[2] The defendants now renew their motions for judgment of acquittal.[3] Alternatively, they request the Court grant a new trial.

## II. Motion for Judgment of Acquittal

The defendants argue that the evidence was insufficient to sustain convictions on the conspiracy count as well as the § 1425(a) counts. In addition, the defendants argue that Counts Two, Three, and Five, charging violations of § 1425(a) based on false statements and documents submitted in support of immigration forms ("I-Forms"), as opposed to naturalization forms ("N Forms"), are not actually crimes as charged in the Indictment.

"'In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006) (quoting United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005)). "'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . .'" Garcia, 447 F.3d at 1334 (quoting United States v.

---

[2] The defendants also moved at trial for judgment of acquittal based on the argument that the government created a "perjury trap" when Brenda Pettit, working with the government, recorded several meetings with the defendants, filled out immigration forms, and attended an immigration interview with Fadi Chahla. The Court denied that motion at trial and declines to reconsider its ruling.

[3] The Renewed Motion (Doc. 215) and the Supplemental Renewed Motion (Doc. 221) were filed on behalf of all three defendants.

2

Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)). "'[T]he court must accept all reasonable inferences and credibility determinations made by the jury.'" Id. (quoting United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir.1989)). The Court reserved ruling on the defendants' Rule 29 motions at the close of the government's case; it therefore considers only the evidence up to that point. See United States v. Moore, 504 F.3d 1345, 1346 (11th Cir.2007).

### A.     Count One: Conspiracy

Defendants argue that the evidence was insufficient to establish the conspiracy charged in Count One, but provide no further argument or legal authority in their papers. (See Docs. 215, 218.)  Rather, they incorporate the argument made during trial in support of their oral Rule 29 Motions.  (Doc. 215 at ¶ 3.)  At trial, the defendants argued that the government failed to prove a single conspiracy.[4]  Though the conspiracy charged by the government involves a number of individuals and acts, and spans approximately ten years, sufficient evidence was adduced to support the verdicts on this count.

Evidence was adduced at trial demonstrating that the three defendants,[5] along with Victoria Knight, Genetta Knight Chahla, Brenda Pettit, and Raymond Knight,[6] were part of a single conspiracy with the common goal of fraudulently obtaining legal permanent

---

[4] In preparing this Order, the Court has had access to uncertified rough transcripts of the trial and some excerpts of certified transcripts; citations to specific transcript pages are therefore mostly unavailable. All citations to trial exhibits are to the government's exhibits.

[5] The three defendants, Mowafak Shahla, Antoun Chahla, and Fadi Chahla, are brothers.

[6] Victoria Knight and Genetta Knight Chahla are sisters, and Raymond Knight is the their brother. Brenda Pettit was married to Raymond Knight before she married Fadi Chahla.

3

residence and citizenship for Mowafak, Antoun, and Fadi by marrying Victoria, Genetta, and Brenda, with Raymond Knight's assistance. The government, in its response, provides a thorough overview of the evidence demonstrating this common goal, the nature of the underlying scheme, and the overlapping participants (Doc. 221 at 6-12), so the Court does not do so here.[7]

Though the three testifying "wives" were not sterling witnesses, the documentary and other evidence was significant enough that, when combined with the testimony of Victoria, Genetta, and Brenda, a reasonable jury could have found the defendants guilty beyond a reasonable doubt. In addition, on a Rule 29 motion, the Court must accept all reasonable inferences and credibility determinations made by the jury, and with the exception of perhaps Genetta, it was not unreasonable for the jury to believe the testimony of these witnesses.[8]

The defendants argued at trial that, at best, the evidence established multiple conspiracies in that each of the three marriages was a separate conspiracy. However, the Eleventh Circuit has explained that "separate transactions are not necessarily separate conspiracies, so long as the conspirators act in concert to further a common goal. If a

---

[7] See United States v. Moore, 525 F.3d 1033, 1042 (11th Cir. 2008) ("In determining whether a jury could have found a single conspiracy, this Court considers: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of the participants.").

[8] In fact, the jury very likely did not believe some of the testimony of Genetta Chahla at trial. Her trial testimony, which is also the subject of the defendants' motions, was different than that given at her plea and in other prior statements. However, a good part of her testimony at trial was actually in the defendants' favor. Specifically, at trial she revoked her previous position that her marriage to Antoun Chahla was fraudulent, and maintained that it is a legitimate marriage and not for immigration benefits. However, she also testified to certain facts regarding her marriage that supported the government's case.

4

defendant's actions facilitated the endeavors of other co-conspirators, or facilitated the venture as a whole, a single conspiracy is established. It is irrelevant that the particular co-conspirators did not participate in every stage of the conspiracy." Moore, 525 F.3d at 1042 (internal citations and quotations omitted). At the defendants' request, the Court instructed the jury that the government must prove a single, overall conspiracy as charged in the indictment, and that proof of several separate conspiracies could not sustain a guilty verdict. (Doc. 212, Instruction No. 14.) The jury determined that the government had proved a single, overall conspiracy and returned guilty verdicts as to each defendant on Count One; the evidence was sufficient for it to do so.

Viewing the evidence in the light most favorable to the government, a reasonable juror could find the defendants guilty beyond a reasonable doubt as to Count One.

### B. Counts Four and Seven: Violations of 18 U.S.C. § 1425(a) Based on False Statements in Applications for Naturalization

Mowafak Shahla and Antoun Chahla argue that the evidence was also insufficient to support convictions on Counts Four and Seven, respectively. The jury found both of these defendants guilty of knowingly procuring or attempting to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship based on false statements made in, and documents submitted with, their Applications for Naturalization (Form N-400), in violation of 18 U.S.C. § 1425(a).[9] (Doc.

---

[9] The Court instructed the jury that the elements of this offense are as follows:

(1)     the defendant provided false information in a naturalization proceeding;

(2)     the false information provided by the defendant related to a material fact;

5

1, Counts 4 & 7; Doc. 213.) Defendants cannot and do not make the argument that their convictions on these counts cannot stand because the false statements were not part of attempts to procure naturalization (as they argue with respect to Counts Two, Three, and Five) because the forms at issue here are naturalization applications, as opposed to immigration forms.[10] Rather, their argument goes solely to the sufficiency of the evidence (see Docs. 215 at 3, 6, 11);[11] thus the Court addresses the defendants' argument with respect to these two Counts more summarily than their arguments as to Counts Two, Three, and Five.

Again, the government provides a thorough overview of the evidence supporting conviction on these counts, including statements and documents, fraudulent lease agreements, and answers to application questions that if their marriages were fraudulent,

---

(3) the defendant acted knowingly and willfully; and

(4) the defendant procured or attempted to procure naturalization of any person, or documentary or other evidence of naturalization or of citizenship as a result of the false information.

(Doc. 212, Instruction No. 15.)

[10] Just above their signatures, Mowafak and Antoun certified under penalty of perjury that the "application, and the evidence submitted with it, [was] all true and correct." (Exs. 29 at 10, 36 at 10, 75 at 8.) In addition, in response to Question 23 in Part 10D of their N-Forms, "Have you **ever** given false information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal," they answered "No." (Exs. 29 at 8, 36 at 8, 75 at 8.) Finally, in response to Question 15 in Part 10D "Have you **ever** committed a crime or offense for which you were **not** arrested," they answered "No." (Id.) Antoun Chahla also stated that he had been "married to and living with the same U.S. citizen for the last three years . . . ." (Exs. 36 at 1, 75 at 1.)

[11] Although Defendants state in their Motion that naturalization/citizenship is not involved in Counts Two, Four, and Five (see Doc. 215 at 11), this cannot be so as to Count Four, which involves Mowafak's Application for Naturalization. The Court presumes it is a typographical error and that it should instead refer to Counts Two, **Three**, and Five, the counts involving immigration forms.

6

were false.  (See Doc. 221 at 14-18.)  And, there was ample evidence from which the jury could find that the marriages between the Mowafak and Victoria and Antoun and Genetta were fraudulent; thus making their answers to Question 23 and 15, and their certifications under penalty of perjury, false.

Viewing the evidence in the light most favorable to the government, a reasonable juror could find the defendants guilty beyond a reasonable doubt as to Counts Four (Mowafak) and Seven (Antoun).

### C. Counts Two, Three, and Five:  Violations of 18 U.S.C. § 1425(a) Based on False Statements in Immigration Forms

The defendants devote the majority of their argument to their motions for judgment of acquittal on Counts Two (Mowafak), Three (Antoun), and Five (Fadi).  The jury found all three defendants guilty of knowingly procuring or attempting to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship based on false statements made in Mowafak's and Antoun's Applications to Register Permanent Residence or Adjust Status (Form I-485) and in Fadi's Petition to Remove Conditions on Residence (Form I-751), in violation of 18 U.S.C. § 1425(a). (Doc. 1, Counts 2, 3 & 5; Doc. 213.)  The defendants argue that because the forms on which these convictions are based are not naturalization forms or applications, making false statements in them does not violate 18 U.S.C. § 1425(a).  In other words, they argue that making false statements in these I-Forms does not amount to an attempt to procure naturalization.[12]  The government argues that evidence was adduced at trial establishing

---

[12]  Government witness Paul Friel, an immigration officer for United States Citizenship and Immigration Services ("CIS"), testified that the term "naturalization" refers to becoming a citizen of the United States.

7

that the defendants "not only intended to apply for naturalization but that they in fact applied;" therefore, "their applications for legal permanent residence constituted a part of their attempt to procure naturalization contrary to the law." (Doc. 221 at 20.)

Mr. Friel testified that an individual cannot obtain citizenship directly from Form I-485 or Form I-751; however, he also testified that both are necessary steps in the path to citizenship. Form I-485 is used to obtain a green card, which gives an individual legal permanent residence in the United States. Form I-751 is used to remove the conditional status of an individual who has conditional permanent residence. Mr. Friel referred to using Form I-751 to obtain "permanent permanent residence." Removing the conditional status is also a necessary step in the path the citizenship. However, Mr. Friel also testified that an individual with permanent residence does not necessarily take the next step to apply for citizenship, nor does he or she have to. Therefore, the issue for the Court is whether the defendants' false statements on these forms (I-485 and I-751) as charged in this case are sufficient to support a conviction under 18 U.S.C. § 1425(a), i.e., did the defendants unlawfully obtain (or attempt to obtain) legal permanent residence as part of an attempt to unlawfully procure citizenship?

Under 8 U.S.C. § 1429 a person must be lawfully admitted to the United States for permanent residence as a prerequisite to naturalization. 8 U.S.C. § 1427(a) requires, among other things, that a person reside in the United States for five years "after being lawfully admitted for permanent residence . . . " before he can seek citizenship.[13] Section 1430(a) requires, among other things, that a person married to a United States citizen

---

[13] Mowafak Shahla submitted his naturalization application under this section. (See Ex. 29.)

reside in the United States for three years "after being lawfully admitted for permanent residence . . . ."[14] Thus, as argued by the government and testified to by Mr. Friel, legal permanent residence is a necessary prerequisite to naturalization.

As with Counts Four and Seven, the evidence was sufficient to support the jury's determination that the defendants knowingly made material false statements on these forms. (See Doc. 221 at 25-28.) The question is whether it was part of a naturalization proceeding and in an attempt to procure naturalization. See 18 U.S.C. § 1425(a); (Doc. 212, Instruction 15.)

Neither party has provided a case on point, and the Court has likewise been unable to locate one. However, courts have examined a similar issue in the context of denaturalization proceedings and have found that where the defendant unlawfully obtained lawful permanent residence, the subsequent naturalization was illegally procured. See United States v. Arango, 670 F.3d 988, 993 & n.2 (9th Cir. 2012) ("If [the defendant] was not a lawful permanent resident at the time of his naturalization because of his fraudulent marriage, then his citizenship was illegally procured."); Federenko v. United States, 449 U.S. 490, 506 (1981) (recognizing the requirement that there be "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship" and that "[f]ailure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside.") (citing 8 U.S.C. § 1451(a)); United States v. Almallah, 244 Fed. App'x 584, 587 (5th Cir. 2007) (holding that because the defendant's marriage to the United States citizen was a "sham,"

---

[14] Antoun and Fadi Chahla submitted their naturalization applications under this section. (See Exs. 36, 54, 78.)

he was not eligible for immediate-relative status, permanent-resident status, or naturalization; thus his naturalization was illegally procured); see also United States v. Zhong, No. C 11-5112, 2012 WL 6201348, at *8-11 (N.D. Cal. Dec. 12, 2012) (recognizing that "[c]ourts have consistently held that those who have gained their permanent resident status in an unlawful manner—and who were ineligible for such status—were not lawfully admitted for permanent residence;" thus they would not be qualified for naturalization) (quotations and citations omitted).

The Defendants rely in part on Kungys v. United States, 485 U.S. 759 (1988), which the government concedes might "appear" to support the defendants' position. (See Doc. 221 at 23.) Both sides acknowledge that the Kungys decision is a fractured one, see United States v. Latchin, 554 F.3d 709, 713 (7th Cir. 2009), and the Court also finds it to be distinguishable. In Kungys, the Supreme Court considered the materiality (of a misrepresentation) requirement in a denaturalization proceeding under 8 U.S.C. § 1451(a). 485 U.S. at 773. The defendant made misrepresentations in a 1947 visa proceeding and a 1954 naturalization proceeding, both of which became a basis for a petition to denaturalize him. Id. at 773. In the Court's opinion with respect to Part II-B, which was joined by three Justices, the Court concluded that it was improper to consider the misrepresentations made in the 1947 visa proceedings "insofar as application of the 'concealment or misrepresentation' clause of § 1451(a) is concerned," finding that this clause applies only where *naturalization* was procured by the willful concealment or misrepresentation of a material fact. Id. "Procurement of other benefits, including visas, is not covered." Id. The Court was unpersuaded by the government's argument that "a misrepresentation in the visa proceeding 'procures' the naturalization because it obtains

10

United States residence, which in turn is a prerequisite to naturalization, see 8 U.S.C. § 1429." Id. However, the Court noted the following:

> It is a quite different question, not argued here, whether, under the statutes governing the issuance of visas in 1947, Kungys' misrepresentations or concealments at that time *rendered his visa invalid*, thus causing his United States residence to be unlawful, and (since lawful residence is a requirement of naturalization) his naturalization to be "illegally procured" under that separate provision of § 1451(a).

Id. at 774 n.8. In this case, evidence was adduced that the defendants applied for legal permanent residence at which time they made false statements and submitted fraudulent documentation in support, which would make their legal permanent residency unlawful. As the cases cited above hold, and as the footnote in Kungys contemplates, where permanent resident status is gained in an unlawful manner, by an individual who was ineligible for such status, he is not lawfully admitted for permanent residence; thus, he is not qualified for naturalization. Further, there is a distinction between obtaining a visa and obtaining legal permanent residence: the former may not necessarily be a prerequisite to procuring naturalization, while the latter expressly is. See 8 U.S.C. §§ 1427, 1429, 1430.

Though the defendants did not actually become citizens of the United States, they certainly tried. Mowafak and Antoun became legal permanent residents based on their Form I-485 which contained false statements.[15] Then, having completed that prerequisite,

---

[15] Both answered "no" to the following question: "Have you ever, in or outside the U.S. . . . knowingly committed any crimes of moral turpitude . . . for which you have not been arrested?" (Exs. 23 at 3, 31 at 3, 74 at 3.) Defendants argue that the term "moral turpitude" is too vague for the jury to have found that the answers constituted a false statement, or that they knowingly made one. However, Mr. Friel testified that CIS considers marriage fraud a crime of moral turpitude. Indeed, courts have concluded that marriage fraud constitutes a crime of moral turpitude. Martinez-Nieto v. Holder, 371 Fed. App'x 760, 761 (9th Cir. 2010); see also Marin-Rodriguez v. Holder, No. 12-2253, 2013 WL 819383, at *3 (7th Cir. Mar. 6, 2013) ("Crimes involving an intent to deceive or defraud are unquestionably morally turpitudinous"). Therefore, if their marriages were fraudulent, it was

11

they applied for naturalization. Fadi attempted to adjust his status from conditional to legal permanent resident by submitting Form I-751, which contained false statements, and then applied for naturalization.[16] (Exs. 50 & 54.)

Mowafak Shahla submitted Form I-485 on September 7, 2001 and obtained legal permanent residence as a result. (Ex. 23.) Then, on July 18, 2007 he submitted his application for naturalization (Form N-400). (Ex. 29.) Antoun Chahla submitted Form I-485 on October 31, 2003 and obtained legal permanent residence as a result. (Ex. 31.) Then, on July 7, 2009, he submitted an application for naturalization. (Exs. 36, 75.) Fadi Chahla submitted Form I-751 on August 15, 2008 in an attempt to remove the conditions of his residence to become a legal permanent resident. (Exs. 50, 77.) Fadi and Brenda jointly filed this Form I-751 based on their marriage. (See Exs. 50, 77.) Then, Fadi submitted an application for naturalization on September 9, 2009. (Exs. 54, 78.) However, after he and Brenda divorced, he withdrew both applications. (Exs. 56, 57.) He then filed a second Form I-751 on August 19, 2010 requesting a waiver from filing a joint petition because of the divorce. (Exs. 58, 79.) This second petition was still based on his marriage to Brenda

---

false to answer "no" in response to this question. Additionally, Mowafak and Antoun certified under penalty of perjuy that the "application and evidence submitted with it is all true and correct." (Exs. 23 at 4, 31 at 4, 74 at 4.) Both defendants submitted documents with their applications that the jury could have found to be fraudulent; thus, even if the term "moral turpitude" is too vague, there was sufficient evidence of other false statements to support the convictions on Counts Two and Three.

[16] Fadi certified in his Form I-751 that if his conditional residence was based on a marriage, "that the marriage was entered in accordance with the laws of the place where the marriage took place **and** was not for the purpose of procuring an immigration benefit." (Exs. 50, 77, Part 5 (emphasis added).) Even if Fadi and Brenda married in a Catholic church "in accordance with the laws" of Syria, the evidence was sufficient for the jury to conclude that their marriage was fraudulent and for the purpose of procuring an immigration benefit, making the certification false.

12

because his conditional residence was initially based on that marriage. (See Exs. 58, 79 Part 2 Basis for Petition ("My conditional residence is based on my marriage to a U.S. citizen or permanent resident, I am unable to file a joint petition, and I request a waiver because: d. I entered into a marriage in good faith, but the marriage was terminated through divorce or annulment.").)

The manner in which the government charged these counts requires some mental gymnastics to convict these defendants, but not so much that the convictions cannot stand.[17] It may be true that some individuals apply for and obtain legal permanent residency and go no further. However, all three of these defendants went a step further when they applied for citizenship. By submitting immigration forms containing false statements and supported by fraudulent documents, the defendants unlawfully obtained, or attempted to obtain, legal permanent residence, which is a prerequisite to naturalization. Then, based upon this status, they attempted to procure naturalization when they were ineligible, in violation of 18 U.S.C. § 1425(a).

Viewing the evidence in the light most favorable to the government, a reasonable juror could find the defendants guilty beyond a reasonable doubt as to Counts Two (Mowafak), Three (Antoun), and Five (Fadi).

---

[17] The likely reason the government charged the defendants with violations of 18 U.S.C. § 1425 (a), rather than 8 U.S.C. § 1325(c), the "marriage fraud" statute, is because of the expiration of the five-year statute of limitations for section 1325 violations. Compare 18 U.S.C. § 3282 (providing a general five-year statute of limitations except as otherwise provided) with 18 U.S.C. § 3291 (providing ten-year statute of limitations for section 1425 offenses). Although charges under section 1325 may have been more straightforward, as discussed herein, the section 1425 convictions on Counts Two, Three, and Five can stand.

## III. Motion for New Trial

Under Rule 33, a court may "grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). Where a motion for new trial is based on the weight of the evidence, "the court need not view the evidence in the light most favorable to the verdict; [instead,] [i]t may weigh the evidence and consider the credibility of the witnesses." United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985)). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. (quoting Martinez, 763 F.2d at 1312). While the discretion afforded the district court to grant a new trial is "quite broad, there are limits to it." Martinez, 763 F.2d at 1312. As the Eleventh Circuit explained in Martinez:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."

Id. at 1312–13 (citations omitted).

Where a motion for new trial is based on an evidentiary ruling, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. United States v. Stephens, 365 F.3d 967, 974 (11th Cir. 2004). Motions for new trials based on other trial errors must demonstrate that the error created circumstances which rendered the trial

14

"fundamentally unfair." See United States v. Campa, 459 F.3d 1121, 1153 (11th Cir. 2006).

Defendants argue for a new trial based on insufficiency of the evidence; failure to give the requested perjury trap and entrapment jury instructions; the testimony of Genetta Chahla; and the admission of Victoria Knight's testimony regarding Mowafak Shahla's prior conviction for food stamp fraud. (Docs. 215 at 13-17; 218 at 1-2.) The Court rejects all of the arguments made by the defendants and comments on only one.

### A. Motion for Mistrial Based on the Testimony of Genetta Chahla

Before trial, Genetta Chahla, a government witness, pled guilty under a plea agreement to conspiracy to commit marriage fraud, making false statements to a federal agency, and mail fraud in violation of 18 U.S.C. § 371. United States v. Chahla, 3:11-cr-14-J-32JBT, Doc. 16. At trial, she recanted her prior statements and testified that her marriage to Antoun Chahla was legitimate and not for the purpose of obtaining an immigration benefit. (Doc. 190, Trial Tr., Testimony of Genetta Chahla, at 22:7-10, Jan. 30, 2013.) Defendants moved for a mistrial based on this testimony, which the Court denied. The defendants now argue that the Court should grant a new trial based on her testimony because the government set up a "perjury trap" for her without the presence of her counsel and in front of the jury which caused the defendants to suffer undue prejudice. (Doc. 218 at 1-2.) The defendants argue that the government called Genetta Chahla as a witness, knowing that she would give false or inconsistent testimony, for the purpose of admitting by impeachment her prior statements and plea colloquy, which incriminated the defendants. (Doc. 218 at 2.) The government responds that it did not believe that Genetta Chahla's testimony would be useless to the government and was willing to take the

unfavorable testimony with the favorable, "includ[ing] the circumstances surrounding how she and Antoun Chahla met, their marriage 18 days after he arrived in United States (see Ex. 83 at 1), their never living together and, more specifically, their never living together at addresses given on immigration forms and supporting documents (see Exs. 31, 32, 35, 36, & 83), and their not living together for the three years before he filed his naturalization application (Exs. 36, 75), which was a statement made on the application." (Doc. 221 at 32-33.)

The defendants argue that this testimony falls within the principle recognized by Napue v. Illinois, 360 U.S. 264, 269 (1959), Giglio v. United States, 405 U.S. 150, 153 (1972), and United States v. Agurs, 427 U.S. 97, 103 (1976), that the government cannot knowingly use false evidence or testimony to obtain a conviction. (Doc 218 at 2.) However, as the government argues, the more relevant principle is that the government acts in bad faith when "offer[ing] the testimony of [a witness] knowing it would be useless, and thereafter elicit[s] the testimony for impeachment in the form of an inconsistent statement." See United States v. Billue, 994 F.2d 1562, 1566 (11th Cir. 1993). In Billue, the Eleventh Circuit found that where the testimony elicited was important to the government's case, and not solely for the purpose of impeachment, it fell outside of the scope of the bad faith rule. Id. at 1566. In this case, the government called Genetta Chahla to elicit her testimony regarding the circumstances of her marriage to Antoun Chahla, as well as false information submitted to immigration.[18] That some of her trial

---

[18] In addition to her testimony that they were married eighteen days after he came to the United States and that they never lived together but said they did, Genetta also testified that they separated shortly after the last immigration hearing, that she received money from Antoun monthly, and that she signed the lease submitted to immigration purporting to lease a house with Antoun from Mowafak that they were not, in fact, renting.

16

testimony, if believed, ultimately could have been more useful to the defendants did not make it useless to the government. In sum, the government's use of Genetta Chahla's testimony, plea colloquy, and prior statements does not warrant a new trial.

Accordingly, it is hereby

**ORDERED:**

Defendants' Renewed Motion for Judgment of Acquittal or Alternative Motion for New Trial (Doc. 215) and Supplemental Renewed Motion for Judgment of Acquittal or Alternatively Motion for New Trial (Doc. 218) are **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on this 3rd day of June, 2013.

TIMOTHY J. CORRIGAN
United States District Judge

sa.

Copies:

Arnold B. Corsmeier, Esquire
Rick Jancha, Esquire
Fred Haddad, Esquire
Lawrence A. Hashish, Esquire
Ibrahim Camille Ghantous, Esquire
U.S. Probation
Defendants

---

She also testified to facts regarding Mowafak's marriage to Victoria.